UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              Case Number 06-20659-BC

v.                              Honorable Thomas L. Ludington

REGINALD SMITH,

        Defendant.
_____/

## **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

On December 20, 2006, a federal grand jury issued an indictment against Defendant Reginald Smith, charging him with distribution of heroin and cocaine; distribution of morphine, dihydrocodeinone, diazapem, and marijuana; maintenance of a drug house; possession of a firearm in furtherance of drug trafficking; and possession of a firearm with a prior felony conviction. On April 27, 2007, Defendant filed a motion to suppress evidence obtained pursuant to two search warrants, both of which Defendant challenges as issued without probable cause as required by the Fourth Amendment. On July 9, 2007, the Court held a hearing on that suppression motion.

The first warrant issued for 2311 Hazelwood in Saginaw Michigan. According to the affidavit of Officer Oscar Lopez on September 22, 2006, he identified the Hazelwood address as a residence to be searched for drugs, drug equipment and paraphernalia, packaging materials, and other items used in the sale or distribution of drugs, including firearms. Lopez is a member of a gang task force. He stated that, at 7:30 p.m. on September 21, 2006, officers observed two vehicles parked together in the parking lot of a fast food restaurant, where it appeared a drug transaction might be in progress. He observed one vehicle exit the lot and drive away. That vehicle was subsequently stopped when it made a rolling stop. At the traffic stop, the driver, Aaron Wahl, stated

that he was a heroin addict who had just purchased heroin from an African-American man named Reggie. Wahl explained that he would call Reggie on a cell phone to set up a deal. According to Wahl, he purchased heroin from Reggie at 2311 Hazelwood approximately ten times in the prior two months and approximately five times in the prior two weeks. Wahl accompanied investigators to that residence and identified it. Wahl stated that only Reggie was present in the house when the drug transactions occurred. Saginaw property records show that Defendant Reginald Smith owned the Hazelwood property as of March 2006.

Lopez's affidavit continues to state that, after the police stopped Wahl, the police contacted the African-American man in the second vehicle in the fast food restaurant's parking lot. That man exited his car and went into the restroom inside the restaurant. Police identified the man as Defendant Reginald Smith. Inside the restroom, the police found approximately 11 packs of heroin and two packs of cocaine (which tested positive for those drugs, according to a field test) in a plastic baggie under a trash can. Based on Lopez's affidavit, a state court issued the warrant for the Hazelwood residence.

Detective Douglas Wortley, also a member of the gang task force, swore to an affidavit on September 22, 2006, in support of a warrant for 722 S. Woodbridge, Saginaw. This affidavit largely mirrors the affidavit for the first warrant but adds that a search warrant was executed on 2311 Hazelwood on that same date:

> The search of that residence resulted in the seizure of heroin, cocaine, Vicodan, codeine syrup, two handguns, two long guns, several scales, numerous cut up papers similar to those seized last night which were found to contain heroin and cocaine and at least one document in [Reginald Smith's] name bearing his residence address of 722 S. Woodbridge, Saginaw, Saginaw County, Michigan. The Hazelwood address does not appear to be currently being used as a residence. Investigators did not seize proceeds (to wit: currency) at the Hazelwood location which would be expected based on the presence of indicators of an on-going heroin

and cocaine sales operation. Surveillance officers at 722 S. Woodbridge saw a vehicle registered to [Reginald and Pamela Smith] arrive at the residence at approximately 12:56pm this afternoon.

Woodbridge Affidavit, p. 2, ¶ 3(E); Govt. Br., Ex. B, p. 2. Based on his training and experience, Wortley stated that persons involved in distributing illegal drugs routinely store records, documents, or proceeds of their operation at their personal residence or where they are staying "in an attempt to protect those records and or proceeds from seizure by investigating law enforcement officers." *Id*. at ¶ 3(L); p. 4. Based on Wortley's affidavit, a state court issued the warrant for the residence on Woodbridge. When the warrant was executed, the search revealed $1,400 in cash, video surveillance equipment, codeine syrup, and marijuana at the Woodbridge residence.

The Fourth Amendment to the Constitution declares that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Thus, in order to effect a search and seizure, the Fourth Amendment requires government officials to have probable cause, which courts assess under the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983). Probable cause generally is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (citing *United States v. Padro*, 52 F.3d 120, 122-23 (6th Cir. 1995)).

To justify the issuance of a warrant by an impartial magistrate, "an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal quotations

and citation omitted). That is, there must be a nexus between the place to be searched and the evidence sought. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (citation omitted). As the Sixth Circuit has explained, "probable cause is based on the totality of the circumstances; it is a practical, non-technical conception that deals with the factual and practical considerations of everyday life." *Abboud*, 438 F.3d at 571.

A court must review the sufficiency of an affidavit in support of a warrant based on "whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003) (citations omitted). When determining whether an affidavit supporting a search warrant is sufficient, the Court is limited to that document's four corners. *Id.* The Court also is obliged to "give great deference to a magistrate's determination of probable cause." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

"When confronted with hearsay information from a confidential informant or an anonymous tipster, a court must consider the veracity, reliability, and the basis of knowledge for that information . . . ." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). If an affidavit provides little basis to show an informant's reliability, police may offer corroborating information. *United States v. Woolsey*, 361 F.3d 924, 927 (6th Cir. 2004). In *Helton*, the Court found no probable cause, due to deficiencies in the indicia of reliability of the informants and an insufficient connection between the allegations of storing money at a location to drug trafficking.

Yet in *United States v. Pelham*, 801 F.2d 875 (6th Cir. 1986), the Sixth Circuit held that a named informant's presence on the premises and direct observation of criminal activity sufficed for probable cause. Similarly, in *United States v. Miller*, 314 F.3d 265, 270 (6th Cir. 2002), the Sixth

Circuit also held that probable cause existed where the informant, who was named in the affidavit and who could have been criminally liable for untrue statements, had seen marijuana growing on the premises in the past 24 hours. *See also United States v. May*, 399 F.3d 817, 824 (6th Cir. 2005) ("The additional evidence substantiating an informant's reliability need not be obtained from a source unrelated to the confidential informant – e.g., an independent police investigation or a second confidential informant – but may be any set of facts that support the accuracy of the information supplied by the informant.").

In *United States v. Miggins*, 302 F.3d 384, 394 (6th Cir. 2002), the Sixth Circuit endorsed the principle that a judge may infer that evidence of drug dealing is likely to be found where drug dealers live. (Citations omitted). The Court drew connections, sufficient for probable cause, between (1) a package containing cocaine sent to and received at one address; (2) the man who signed for the package under an assumed name; (3) a slip of paper in his pocket listing that assumed name, the names of the sender and recipient on that package, and a second address; and (4) the man's home at that second address. *Id*. at 393. Yet if a warrant affidavit relies "almost exclusively on the uncorroborated testimony of unproven confidential informant," the mere allegation that a defendant is a drug dealer cannot tie criminal activity to his home. *Frazier*, 423 F.3d at 523.

Here, as with any review of the four corners of a warrant affidavit, this case turns on the facts alleged in the affidavits. Emphasizing a "practical, non-technical" approach to reviewing an affidavit, the first affidavit regarding the Hazelwood residence does state probable cause to issue a warrant. The affiant did not attest to the reliability of Wahl. In fact, the affidavit provides no basis for concluding that police had any knowledge of Wahl from any prior dealings. In part, the affiant filled the gap pertaining to Wahl's veracity with independent police corroboration – shortly after an

alleged drug transaction with Defendant and after Defendant entered a public restroom, police found quantities of cocaine and heroin in that restroom. Also, other facts support the accuracy of the information that Wahl provided, in light of *Pelham* and *May*. When he spoke to police, Wahl stated that he had just purchased drugs from Defendant. Wahl had been to the Hazelwood residence to purchase drugs on multiple occasions, and he physically identified the premises. Moreover, he is named in the affidavit. Once these facts establish the reliability of Wahl, his allegations about drug transactions at the Hazelwood residence suggest a fair probability that evidence of a crime will be located at that address. Given that nexus to criminal activity, probable cause did exist for a warrant to issue as to the Hazelwood residence.

Regarding the Woodbridge residence, the affidavit for that warrant also establishes the existence of probable cause. This affidavit recites the execution of and findings at the Hazelwood address. Included in those findings were almost everything typical of the materials and equipment of drug dealing, such as heroin, cocaine, Vicodan, codeine syrup, two handguns, two long guns, several scales, and numerous cut up papers similar to others that had been found to contain heroin and cocaine. Detective Wortley, based on his training and experience, identified a noteworthy exception to the items found at the Hazelwood residence: substantial amounts of cash. He explained that such an absence was consistent with the routine practice of drug traffickers to store records or proceeds separately from the rest of their operation, as a means to frustrate police investigation. *See* Woodbridge Affidavit, ¶ 3(L); Govt. Br., Ex. B, p. 4. In addition, Wortley observed that the Hazelwood address was not in use as a residence. Present at the Hazelwood address, however, was a document that did identify Defendant's residence address as 722 S. Woodbridge. Police subsequently observed Defendant and his wife at the Woodbridge address, and

police also confirmed that Defendant and his wife owned the Woodbridge address. Viewed under the totality of the circumstances and under a practical, non-technical approach, these facts provided a substantial basis for finding that Wortley's affidavit did establish probable cause to believe that evidence of drug trafficking would be found at the Woodbridge address.[1] Because probable cause supported both warrants, Defendant has not shown a basis for suppressing evidence that resulted from those searches.

Accordingly, it is **ORDERED** that Defendant's motion to suppress [dkt #18] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: July 20, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 20, 2007.

s/Tracy A. Jacobs
TRACY A. JACOBS

---

[1] Because the Court is persuaded that probable cause supported both warrants, the Court will not consider the government's argument based on the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984).